UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| SILVO HARDWARE COMPANY, | ) | Case No. 04 B 00038 |
| | ) | |
| Debtor | ) | Judge Carol A. Doyle |
| | | Hearing: July 13, 2004 at 2:00 p.m. |

### MEMORANDUM IN SUPPORT OF
### U.S. TRUSTEE OBJECTION TO APPLICATION BY
### DEBTOR'S COUNSEL FOR FINAL ALLOWANCE
### OF COMPENSATION AND REIMBURSEMENT

Ira Bodenstein, the U.S. Trustee for the Northern District of Illinois, by and through his

counsel, M. Gretchen Silver, submits this memorandum in support of his Objection pursuant to

Bankruptcy Code Section 330 to the Application by Debtor's Chapter 11 Bankruptcy Counsel for

First and Final Allowance of Compensation and Reimbursement of Expenses (the Application).

### BURDEN OF PROOF

The burden of proof is upon the applicant to establish that the fees requested are

reasonable and allowable. In re Wildman, 72 B.R. 700, 708 (Bankr. N.D.Ill. 1987). Debtor's

counsel must therefore establish that his requested fees should be allowed and are reasonable.

### SECTION 328(c)

Section 328 (c) of the Bankruptcy Code establishes authority and discretion with the

Court to "deny allowance of compensation for services and reimbursement of expenses of a

professional person employed under section 327 . . . if, at any time during such professional

person's employment under section 327 . . . , such professional person is not a disinterested

person, or represents or holds an interest adverse to the interest of the estate with respect to the

matter on which such professional person is employed."

## FIDUCIARY DUTIES OF DEBTOR'S ATTORNEY IN CHAPTER 11

In a Chapter 11 proceeding, the attorney for the debtor in possession, as an officer of the

Court charged to perform duties in the administration of the case, has a high fiduciary duty to the

estate represented. In re Grabill Corp., 113 B.R. 966 (Bankr. N.D.Ill. 1990). Counsel for a

corporate Chapter 11 debtor in possession owes a fiduciary duty to the corporate entity, *not the*

*entity's principals.* Id. at 970 (emphasis added). Finally, the attorney for a Chapter 11 debtor in

possession is obligated to act not in his or her own best interest, but in the best interest of all the

creditors. In re Wilde Horse Enterprises, Inc., 136 B.R. 830, 840 (Bankr. C.D. Ca. 1991).

As a fiduciary of the estate and an officer of the court, a debtor in possession's counsel

has a duty to advise the client, to go beyond merely responding to the client's request for advice.

> It requires an *active* concern for the interests of the estate, and its
> beneficiaries, the unsecured creditors. Consequently, the attorney may not simply close
> his or her eyes to matters having a legal and practical consequence for the estate -
> especially where the consequences may have an adverse effect. The attorney has the duty
> to remind the debtor in possession, and its principals, of its duties under the Code, and to
> assist the debtor in fulfilling those duties. See In re Consupak, Inc., 87 B.R. 529, 548 -
> 551 (Bankr. N.D. Ill. 1988); In re Sowers, 97 B.R. 480, 488 (Bankr. N.D. Ind. 1989).

In re Wilde Horse Enterprises, Inc., 136 B.R. at 840. The attorney for a fiduciary of a bankruptcy

estate "cannot close his eyes to matters having legal consequences for the estate. Especially

where legally adverse facts come to his attention, the attorney . . . must take the initiative to

inform his client of the need for preventative or corrective action." In re Consupak, Inc., 87 B.R.

529, 549 (Bankr. N.D. Ill. 1988).

## DUTY OF REASONABLE INQUIRY

All attorneys appearing in federal courts, which include those who practice in the

bankruptcy courts, are bound by F.R.Civ.P. 11, incorporated into the Fed.R.Bankr.P. as Rule

9011. Under that rule, an attorney who signs a pleading is certifying that to the best of that

attorney's knowledge, information or belief "formed after reasonable inquiry", the content of the

pleading is "well-grounded in fact. . .." The "well-grounded in fact" requirement imposes a duty

on the attorney to not merely accept the client's or the client's principals' version of the facts

without any further investigation, but requires that the attorney perform some level of

investigation or questioning of the client before including those facts in a pleading. Fleming

Sales Co. v. Bailey, 611 F.S. 507, 519 (D.C. Ill. 1985).

## DUTY TO DISCLOSE

In submitting a Disclosure Statement, the debtors have duty to provide "adequate

information," defined as "information of a kind, and in sufficient detail as far as is reasonably

practicable in light of the nature and history of the debtor and the condition of the debtor's books

and records, that would enable a hypothetical reasonable investor, . . . to make an informed

judgment about the plan...." 11 U.S.C. Section 1125(a)(1). Debtor's counsel, as set forth in the

discussion of duties above, is similarly obligated.

In In re Scott, 172 F.3d 959 (7th Cir. 1999)(a case procedurally distinguishable from the

case at hand), debtors failed to disclose in their Disclosure Statement the existence and value of

several businesses they owned that they intended to keep. The court, in determining whether a

disclosure statement that failed to fully disclose all assets was a "concealment" for terms of a 727

complaint, noted that the debtor-in-possession owes a fiduciary duty to his creditors and that duty

requires the debtor-in-possession to furnish such information concerning the estate and the

estate's administration as is requested by a party in interest. Scott at 967.

## THE FACTS

In this case, the Court approved the Debtor's Disclosure Statement, which had been repeatedly amended at the request of both the U.S. Trustee and the Creditors' Committee to include further information. The Court approved the Disclosure Statement on the record on April 20, 2004 and calendered it on the draft order to follow call. Some time shortly thereafter but before the entry of the order, the Creditors' Committee discovered that two insiders had filed proofs of claim one month earlier, on or about March 31. The insider claims increased the general unsecured creditor pool by approximately 25 percent, thereby proportionately diluting any projected returns to unsecured trade and general creditors. These insider claims were not disclosed on the Schedules or in the Statement of Financial Affairs and they were not disclosed at the 341 meeting. Nor were these claims disclosed at any of the several hearings that occurred after they were filed. The insiders do not appear to be represented by separate counsel and one of them was the individual who acted on behalf of the Debtor for purposes of the reorganization. The two insiders are also the Debtor's shareholders.

When the Committee learned of the proofs of claims, they acted immediately to withdraw their support of the Disclosure Statement, filed an emergency motion. The motion requested that approval of the Disclosure Statement be revoked and set forth the various and repeated problems the Committee encountered with the Debtor's lack of accurate and complete disclosure. The Committee also contacted the U.S. Trustee's office. At the hearing on the Committee's emergency motion on April 28, 2004, the U.S. Trustee made an oral motion to appoint a Chapter 11 trustee based on the immediate and prior problems with this case. A transcript of that hearing is attached as Exhibit A and incorporated herein.

At the April 28 hearing, counsel admitted that he was aware that the proofs of claims had

been filed but failed to include these claims in the Plan and Disclosure Statement, failed to

include them in the liquidation and distribution analysis, and failed to inform the Committee or

the Court at any time during several hearings that occurred during April 2004 addressing the Plan

and Disclosure Statement of the insiders' previously undisclosed claims and their intent to pursue

them. After the Court set a briefing schedule on the issue of the appointment of a Chapter 11

trustee, the Debtor voluntarily converted the case on May 3, 2004.

The U.S. Trustee objects to fees requested by Debtor's counsel for time spent on the Plan

and Disclosure Statement after the insider Proofs of Claim were filed (18.6 hours, $5580).

Counsel's time in this category after April 1 should not be compensated because of counsel's

failure to disclose the existence and/or filing of the insiders' claims to the Committee, the Court

and the U.S. Trustee at any time before the approval of the Disclosure Statement. As a result of

i)counsel's failure to fully satisfy his statutory and fiduciary duty to the estate and its creditors

after the filing of the insiders proofs of claim of which he had knowledge and ii) his failure to

fully satisfy his duty to reasonably inquire and disclose all facts of which he was or should have

been aware that were also relevant to the Creditors Committee, the U.S. Trustee requests that

counsel's request for fees for April relating to the Plan and Disclosure Statement be denied. The

Committee's emergency motion and the April 28 transcript both support the conclusion that

counsel failed to disclose or withheld information that should have been disclosed.

Wherefore, the U.S. Trustee requests a reduction of the fees awarded to Debtor's

counsel pursuant to his Final Fee Application by $5580 and for any further relief that this court

deems just and equitable.

Dated:  July 7, 2004

Respectfully submitted,
Ira Bodenstein
United States Trustee

M. Gretchen Silver, Trial Attorney
Attorney ID: #6204419
Office of the United States Trustee
227 W. Monroe Street, Ste. 3350
Chicago, IL 60606
(312) 886-5785

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SILVO HARDWARD COMPANY,    )   No. 04 B 00038
                       )   Chicago, Illinois
                       )   10:00 A.M.
           Debtor.    )   April 28, 2004

TRANSCRIPT OF PROCEEDINGS BEFORE THE
HONORABLE CAROL A. DOYLE

APPEARANCES:

For Debtor:                 Mr. Laurence Kallen;

For U.S. Trustee:         Ms. Denise DeLaurent;

For creditors committee:   Ms. Catherine Vega.

Court Reporter:          Lisa Bresnahan
                    U.S. Courthouse
                    219 South Dearborn
                    Room 661
                    Chicago, IL 60604.



GOVERNMENT
EXHIBIT
4

1           THE CLERK:  Silvo Hardware.

2           MR. KALLEN:  Good morning, Judge.

3    Laurence Kallen for the debtor.

4           THE COURT:  Good morning.

5           MS. VEGA:  Good morning.  Catherine

6    Vega and Bonnie Michael on behalf of creditors

7    committee.

8           THE COURT:  Good morning.

9           MS. DeLAURENT:  Good morning, Your

10   Honor.  Denise DeLaurent on behalf of the United

11   States Trustee's office.

12          THE COURT:  Good morning.  All right.

13   Well, I've read the emergency motion.

14          MS. DeLAURENT:  Your Honor, I spoke

15   to Mr. Kallen and the other parties this morning.

16   We believe that, given the circumstances, we have

17   schedules that have been filed in penalty of

18   perjury.  You know, a 341 meeting, not once did we

19   know that insider claims existed.  They weren't --

20   and, you know, in the bankruptcy system you rely on

21   documents and people's honesty to determine what

22   the case is about.  And part of the issue in this

23   case from day one was basically they have a 363

24   sale, the purchaser wanted to come and flush it

25   through the bankruptcy system to get all the

1 | protections.

2 | THE COURT: Right.

3 | MS. DeLAURENT: And we talked about

4 | on the record, you know, if parties were going to

5 | object to that because was this sale benefitting

6 | anybody else but the bank and the insiders who had

7 | a guarantee. And part of that issue was whether

8 | assets existed and what the debt was. Well,

9 | clearly what the debt was is not the number that

10 | was in the disclosure statement and it's not the

11 | number that was in the schedules. And there is a

12 | fiduciary duty that exists. It's even a higher

13 | duty for debtor-in-possession to be honest and to

14 | have adequate information.

15 | I did bring some Seventh Circuit

16 | cases. In re Scott, which is a little different

17 | case, but talks about the duty of the debtor and

18 | the information in the disclosure statement and

19 | right to rely on it. I think there is a basis

20 | based on the record before you, the schedules, the

21 | disclosure statement and a plan, to put a Chapter

22 | 11 trustee in today. I don't believe that there is

23 | any trust in this debtor to go forward. I don't

24 | know whether these claims can be subordinated.

25 | They clearly affect the distribution to the

1     unsecured creditors.  And I'm happy, I guess, that

2     the unsecured creditors had to discover this, that

3     nobody brought this information.  I think there is

4     an affirmative duty to continue as you know

5     information to bring it to not only our office,

6     this court and to the unsecured creditors,

7     especially when it materially affects the case in a

8     distribution case.

9                     So I know Mr. Kallen has no authority

10    today to agree to the appointment of a Chapter 11

11    trustee.  He has not spoken to his clients, but I

12    believe that the creditor's committee also supports

13    our position.  They do not believe that the

14    disclosure statement should go out, which I'm in

15    firm agreement with that.  I see no reason at this

16    time.

17                    Obviously I'm doing this on an oral

18    motion.  I don't know if you would want a written

19    motion to go forward, but this just came in

20    yesterday on an emergency basis and --

21                    THE COURT:  All right.

22                    MS. DeLAURENT:   -- this is the first

23    time we've really determined the lack of

24    information that existed in this case.

25                    MS. VEGA:  Your Honor, we would

1   support the appointment of a trustee.  We feel that

2   we've been having to police the debtor and play

3   Sherlock Holmes here and spending the money of the

4   creditors to police the debtor as opposed to trying

5   to pursue assets for the benefit of those

6   creditors.  And we feel that the trustee could more

7   effectively and, in our eyes, fairly move forward

8   with this case.

9                    MR. KALLEN:  Judge --

10                   THE COURT:  Mr. Kallen, let me just

11   ask you did you know that these insider claims had

12   been filed?

13                   MR. KALLEN:  I'm looking --

14                   THE COURT:  I don't see --

15                   MR. KALLEN:  Okay.  Judge --

16                   THE COURT:  -- your name --

17                   MR. KALLEN:  No, no.  I want --

18                   THE COURT:  -- as counsel --

19                   MR. KALLEN:  I want to --

20                   THE COURT:  -- on this, so...

21                   MR. KALLEN:  -- speak to that.  And,

22   in fact, this is my error in the sense that these

23   claims were -- page two of the disclosure

24   statement, which is a chart which lists the claims,

25   various kinds and everything, we listed the claims

1   based on the schedules of which none of the claims,

2   to my recollection, were filed as disputed.  So

3   that was it.  That's how we listed it.  That

4   would --

5                    THE COURT:  I don't get that.  None

6   of the claims filed as disputed?  What are you

7   talking about?

8                    MR. KALLEN:  When we listed the

9   schedules we didn't list any claims as disputed.

10  So we list --

11                   THE COURT:  Okay.  So these are all

12  the debts that the debtor --

13                   MR. KALLEN:  That's correct.

14                   THE COURT:  -- itself scheduled.

15  Which, of course, did not include the insider

16  claims in a closely-held corporation.

17                   MR. KALLEN:  That's correct.  I'm

18  taking this a step at a time.

19                   THE COURT:  Okay.

20                   MR. KALLEN:  Okay.

21                   THE COURT:  Right.

22                   MR. KALLEN:  And it was based on the

23  schedules.  And that chart on page two was done now

24  probably a month-and-a-half ago or so when I first

25  did the disclosure statement, okay?  In the interim

1   while we were going back and forth on this

2   disclosure statement, the claims period ended and

3   those insider claims were filed within the claims

4   period, but towards the end of the claims period,

5   but within it.  And I have to admit that I didn't

6   say to myself, "Okay.  Now I have to change page

7   two of the chart to show the insider claims."  I

8   have to admit I didn't make that connection.

9            Last week after the court approved

10   the disclosure statement and the plan with a few

11   minor changes, I circulated the -- what I had

12   thought -- what I had hoped would be the final form

13   of the plan, the disclosure statement and the order

14   and notice for it to all go out to the creditors to

15   the trustee and to the creditors committee.  I did

16   that last week.  And I don't remember my exact

17   wording, but it was along the lines of, "You know,

18   I think this is a final form.  Let me know if it's

19   not.  Sorry."

20            So I didn't hear anything until

21   yesterday, and so I was going to go ahead and file

22   all this.  When the creditors committee attorney

23   called me up and said, "You know, this should be

24   listed, the insider claim should be listed on page

25   two," I said, "Okay."  You know, I really -- I hate

8

1   almost to --

2             THE COURT:  Well, who --

3             MR. KALLEN:  -- admit this --

4             THE COURT:  -- prepared --

5             MR. KALLEN:  -- but there is no

6   method to the madness, Judge, all right?

7             THE COURT:  Who prepared these claims

8   for Mr. Zirin?

9             MR. KALLEN:  I don't know.  They --

10            THE COURT:  He signs it himself.  I

11  mean, it looks like he's done it himself.

12            MR. KALLEN:  They -- I don't know.

13  They put the number in and everything.  I'm not --

14            THE COURT:  Were you aware that they

15  were going to assert insider claims like this?

16            MR. KALLEN:  I wasn't aware until the

17  end of the claims period.  I wasn't aware before

18  that, I'll say that.  I'm not sure anybody thought

19  about it before that.  I had no discussions with

20  them prior to the very end of the claims period.

21  And I'm saying again I knew about the claims being

22  filed.  I could have and should have said to

23  myself, "Well, maybe I should add that to the

24  chart," but I just didn't make the connection, and

25  I apologize for that.  There is no method to the

1   madness.  When they called me up and said this

2   should be included in the disclosure statement, I

3   said, "Yeah, sure, fine."  And we agreed actually,

4   not the trustee, but with the creditors committee,

5   that we would add that to the disclosure statement,

6   and that would be the end result of the motion

7   today --

8               MS. VEGA:  The problem, Your Honor,

9   is --

10              MR. KALLEN:  -- until the trustee got

11  here this morning and said that she wanted a

12  Chapter 11 trustee.  As was stated correctly, I

13  have no authority to consent to that.  It may very

14  well be that the debtor will consent to it.  It's

15  getting down to the point where I'm not sure it

16  makes much difference for this to proceed one way

17  or another.  My suggestion would be continue this

18  motion to next Tuesday or Wednesday, give me until

19  Monday to file a response to the oral motion.  I've

20  got no objection to the oral motion.  My guess is

21  I'm not going to file a response, but give me the

22  ability to do that.  My guess is by next week the

23  debtor probably may very well consent to this or

24  we'll have a good response for what's been said.  I

25  think that there is a lot of rancor in this case

10

1   because there are a lot of small creditors who are

2   being hurt by this bankruptcy.  And, of course, the

3   owners of this company have lost their company.

4   And so I think that's what -- where this all

5   emanates.  The court at that point can decide how

6   to continue.  So that's my suggestion for today.

7              MS. VEGA:  The problem, Your Honor,

8   from our perspective is this -- there is a pattern

9   here, you know?  The debtor opposed having a

10  creditors committee.  The only -- you know, they

11  knew that that -- when they were proposing the sale

12  that the Zirins were getting these consulting

13  agreements for 50 grand.  They didn't tell us.  We

14  found out ourselves and had to come in on a motion

15  to argue and get the purchase price higher for the

16  creditors.  The same thing with this.  We found out

17  about these claims because Ms. Michael looked at

18  the claims docket.  Otherwise, this would have gone

19  through without ever having any reference to those

20  claims.  And this pattern of we know the

21  information, we don't tell you until you spend the

22  creditors' money to go and find out, and then here

23  we are in court and we have to come back, it's

24  becoming frustrating for our clients when there is

25  a very small amount of money available for them to

1   begin with.  We shouldn't be spending the money to

2   police the debtor.  It should be to bring assets

3   into the estate.

4              We did talk to Mr. Kallen yesterday.

5   He said he didn't know about the claims, he didn't

6   put it in there.  And we said it should be in there

7   to be an adequate disclosure statement.  We want an

8   adequate disclosure statement.  But we felt all

9   along that a trustee or someone else other than

10  debtor should be pursuing -- action, should be

11  collecting the receivables, should be distributing

12  the assets of the plan.  That's been our position

13  since day one.  And that's what we'd like to see

14  with a Chapter 11 trustee.

15             MR. KALLEN:  Judge --

16             THE COURT:  And this is the debtor

17  who originally said we're just not going to pursue

18  all those --

19             MS. VEGA:  Exactly.

20             THE COURT:  -- preference kind of

21  actions when the primary potential targets --

22             MS. VEGA:  Are theses insiders.

23             MR. KALLEN:  Judge --

24             THE COURT:  -- are the insiders.  So

25  that certainly would weight pretty strongly in

1    favor of a Chapter 11 trustee.

2                    MR. KALLEN:  Judge, I just want to --

3                    THE COURT:  The debtors just --

4                    MR. KALLEN:  Just mention --

5                    THE COURT:  -- seem to be --

6                    MR. KALLEN:  -- thing which --

7                    THE COURT:  The insiders seem to be

8    less than forthright.

9                    MR. KALLEN:  I just want to mention

10   one thing that was inaccurate.  The consulting

11   agreements for the two owners that were part of

12   that sale deal was disclosed at the 341 meeting of

13   creditors.  So that was disclosed --

14                    THE COURT:  I don't --

15                    MR. KALLEN:  -- from day one.

16                    THE COURT:  -- think so.

17                    MS. DeLAURENT:  No.  I --

18                    THE COURT:  There were some --

19   certainly there may have been some little part of

20   it disclosed.  There was something that I think I

21   knew about before the creditors committee brought

22   something new to my attention.  But they definitely

23   found out something that had not previously

24   been certainly disclosed to the court in terms of

25   this deal and --

1        MS. DeLAURENT:  I just listened to

2   the 341 meeting last night, which, of course, we do

3   when we have these sort of allegations, and there

4   was not disclosure --

5        THE COURT:  Okay.  Well --

6        MR. KALLEN:  I --

7        MS. DeLAURENT:  There was discussion

8   that there was some consulting.  But any current

9   contract that was in place I do not believe was

10  discussed.  Now, clearly I think there has been a

11  list of the consulting firm and people knew that

12  that existed.  But they weren't -- but I don't

13  believe they were aware until the committee

14  discovered that the --

15       MS. VEGA:  Yeah.  And --

16       MS. DeLAURENT:  -- contacts existed.

17       MS. VEGA:  -- the consulting firm is

18  Solution Systems, but --

19       MS. DeLAURENT:  Right.

20       MS. VEGA:  -- the consulting

21  agreement was for Stuart and David individually.

22  So there is a difference.

23       MR. KALLEN:  Judge, that consulting

24  agreement -- those consulting agreements did not

25  exist at the time of the Chapter 11, at the time of

1    that meeting, my recollection is, because -- I'm

2    trying to recall the dates here.  The problem was

3    that this case was supposed to be filed with signed

4    contracts already for the sale of the company and

5    the consulting agreements, and they weren't.  And

6    this court may recall that at one point on the

7    deadline of the time to file the plan I was forced

8    to file a plan based on contracts that weren't

9    finally signed because -- I had to get it done and

10   we got it the next day.  But it -- those contracts

11   did not exist, but the consulting was disclosed at

12   the Section 341 meeting.  The motion of the

13   debtor --

14            THE COURT:  Well, I don't want to

15   argue about --

16            MR. KALLEN:  Okay.  I just --

17            THE COURT:  -- the merits of it.

18   I'm --

19            MR. KALLEN:  -- want it --

20            THE COURT:  -- just saying --

21            MR. KALLEN:  -- correct that --

22            THE COURT:  -- I think that the

23   principals here have been less than forthright.  I

24   think it's pretty abundantly clear on the record

25   through the course of this that they have been less

15

1   than forthright.  I'm not sure Chapter 11, Chapter

2   7.  Generally I like a written motion.  The debtor

3   is waiving their rights.  But I think maybe you

4   should -- I don't think there is a problem with

5   continuing this until, I guess, Monday.

6           MS. DeLAURENT:  Do you want us to put

7   this in writing in a motion?

8           MS. VEGA:  That's fine, Your Honor.

9           MS. DeLAURENT:  If they're going to

10   file a response, I think it's appropriate that --

11           THE COURT:  Right.

12           MS. DeLAURENT:  -- we do that.

13           MR. KALLEN:  Okay.

14           THE COURT:  Right.  And, you know,

15   you would know better than I, but I'm wondering if

16   a Chapter 7 trustee...

17           MS. DeLAURENT:  Well --

18           (Simultaneous colloquy.)

19           MS. VEGA:  -- Chapter 11, Your Honor.

20           MS. DeLAURENT:  -- the problem is is

21   that, you know, it is a liquidating plan and --

22           THE COURT:  Right.

23           MS. DeLAURENT:  -- there are causes

24   of action.  You really have plan and disclosure

25   statement -- I mean, I've looked at the disclosure

1  statement.  There is not a lot of information in

2  there.  The real issue has been the amount of

3  claims.  And the fact that you have, you know, the

4  insiders filing claims on March 31st and then we

5  have a modified disclosure statement on April 20th,

6  and that's not disclosed.  On top of that, the

7  insiders basically attach a loss of -- a balance

8  sheet, so to speak, to their claim that says

9  "shareholder."  I mean, there is no backup for

10  this.  There is no testimony --

11                 THE COURT:  Right.

12                 MS. DeLAURENT:  -- about it.

13                 THE COURT:  And there is --

14                 MS. DeLAURENT:  Nobody knows if.

15                 THE COURT:  -- no basis to say that.

16  I mean, I certainly would make absolutely no

17  determination as to whether these are legitimate

18  claims --

19                 MS. DeLAURENT:  Right.

20                 THE COURT:  -- at this point.

21  Because, you know -- well, the motion sets out

22  how --

23                 MR. KALLEN:  And what --

24                 THE COURT:  -- there is nothing about

25  these PETITIONS, these supposed -- these -- well,

1  they are claims at this point, but --

2             MS. DeLAURENT:  My problem --

3             (Simultaneous colloquy.)

4             THE COURT:  -- ever been disclosed

5  before in documents back --

6             MS. DeLAURENT:  My problem is is that

7  we have a dishonest debtor.  And we are in a

8  Chapter 11 case, and the Seventh Circuit has said

9  in the Chapter 11 case the debtor-in-possession

10  owes a greater duty of disclosure than even a

11  typical Chapter 7 debtor as they're serving as a

12  trustee in bankruptcy and operating a business

13  which is an asset of the estate.  And that's

14  exactly the problem that we have here.  We have

15  information under penalty of perjury, not there.

16  We have a disclosure statement which is additional

17  information and disclosure provided, not there.

18  It's a problem.

19             MR. KALLEN:  I contest whether it's a

20  dishonest debtor.  This is a company that basically

21  has fallen apart, and this is fall-off from the

22  falling apart.  It's just not very well organized.

23  It's pretty dysfunctional and it has been, and

24  that's why it's our business.  I'm just contesting

25  that part.  But in any event, Judge, if you would

1   give them a time to make the motion and give us a

2   time to respond, if we choose to.  I'm not sure

3   that we will, but we can --

4                    THE COURT:  All right.  Well, why

5   don't you get your motion on file as soon as

6   possible --

7                    MS. DeLAURENT:  Yeah.  Could we file

8   that by Friday, if that's okay?

9                    THE COURT:  That's fine.  Although,

10  I'm thinking perhaps -- you know, the more notice

11  you can give to other parties --

12                   MS. DeLAURENT:  Sure.

13                   THE COURT:  -- besides the committee,

14  the better.  But --

15                   MS. DeLAURENT:  Well, do you want

16  us -- you want us --

17                   THE COURT:  You know, I suppose we

18  don't need notice to all creditors.

19                   MS. DeLAURENT:  I know.  I mean, I

20  can do the 20 largest creditors --

21                   THE COURT:  All right.  That sounds

22  good.

23                   MS. DeLAURENT:  -- in this case, and

24  the committee, obviously --

25                   THE COURT:  Okay.

1           MS. VEGA:  I mean, those 20 largest

2     creditors are represented by us, so -- and are

3     actually the three members of the committee or the

4     largest.

5           THE COURT:  Okay.

6           MS. VEGA:  So we've communicated to

7     them the problem.  They understand the issue.  I

8     don't see why notice to everybody would be -- and

9     it's just --

10          THE COURT:  All right.  It's --

11          MS. VEGA:  -- going to cost more.

12          THE COURT:  It will just cost more.

13          MS. DeLAURENT:  We can do the 20

14    largest creditors with the committee --

15          MS. VEGA:  That's fine.

16          (Simultaneous colloquy.)

17          THE COURT:  -- cost the estate, but

18    okay.  If you'll just get notice out as soon as you

19    can but in no event later than Friday.

20          MS. DeLAURENT:  Okay.

21          THE COURT:  And then we'll come back

22    on Monday.  And obviously the debtor is here.  I'm

23    going to say that shortened notice is appropriate

24    for a hearing on the motion.

25          MR. KALLEN:  Judge, are you going to

1   give us a chance to respond?

2                THE COURT:  I thought that's what you

3   were going to do by...

4                MS. VEGA:  Just file simultaneous

5   briefs.

6                THE COURT:  I thought you were just

7   going to file a response by...

8                MR. KALLEN:  Well, now that -- yeah.

9                THE COURT:  Now.

10               MR. KALLEN:  But now that --

11               THE COURT:  In the next --

12               MR. KALLEN:  -- she's going to

13   make --

14               THE COURT:  -- day or two, if you're

15   going to.  Well, either --

16               MR. KALLEN:  Written motion --

17               THE COURT:  -- you're going to not --

18   either you're going to not object or you can --

19   well, let's see.

20               MR. KALLEN:  Judge, since this is

21   going to be a written motion, I said I would

22   respond to the oral motion by Monday.  So if I

23   don't see this written motion until Friday, we need

24   a couple days to respond.  My suggestion, Judge, if

25   it's okay with the court, is let us -- give us

1   leave to file any response by Tuesday and we can

2   come back Wednesday.  How is that?

3                   THE COURT:  I guess that's all right,

4   but that's --

5                   MR. KALLEN:  It will also --

6                   THE COURT:  -- up to them.

7                   MR. KALLEN:  It will also give --

8                   MS. VEGA:  That's fine.

9                   MR. KALLEN:  -- me a chance to talk

10  to --

11                  MS. DeLAURENT:  That's fine.

12                  MR. KALLEN:  -- the client.

13                  THE COURT:  That's fine.  That's

14  fine.

15                  MS. DeLAURENT:  Okay.

16                  MR. KALLEN:  All right.  So motion by

17  Friday.  Response by Tuesday, May 4th.  We'll come

18  back on the 5th.

19                  MS. DeLAURENT:  On the 5th.  That's

20  fine.

21                  MS. VEGA:  At 10:30, Your Honor?

22                  THE COURT:  Yes.

23                  MS. DeLAURENT:  Your Honor, you know,

24  I just can't -- it's Gretchen Silver's case and I'm

25  stepping in for her.  I just don't know what her --

1 | I've got her schedule here, so...

2 | THE COURT:  Okay.

3 | MS. DeLAURENT:  I mean, I may be able

4 | to get a motion on file sooner than Friday --

5 | THE COURT:  Okay.

6 | MS. DeLAURENT:  -- in the case,

7 | but...

8 | THE COURT:  Okay.  That's fine.  All

9 | right.  And you should include a request for

10 | shortened notice in there.

11 | MS. DeLAURENT:  Yes, that's fine,

12 | Judge.

13 | THE COURT:  All right.  So May 5th at

14 | 10:30.

15 | MS. DeLAURENT:  Thank you, Your

16 | Honor.

17 | MR. KALLEN:  Thank you, Judge.

18 | (Which were all the proceedings had
   | in the above-entitled cause, April
19 | 28, 2004.)

20 |

21 | I, LISA BRESNAHAN, DO HEREBY CERTIFY
   | THAT THE FOREGOING IS A TRUE AND ACCURATE
22 | TRANSCRIPT OF PROCEEDINGS HAD IN THE
   | ABOVE-ENTITLED CAUSE.

23 |

24 |

25 |